1dIN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LONZELL TOWNSEND, | ) CASE NO. 3:25-CV-01149-JJH |
| Plaintiff, | ) JUDGE JEFFREY J. HELMICK<br>) UNITED STATES DISTRICT JUDGE |
| v. | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) MAGISTRATE JUDGE<br>) CARMEN E. HENDERSON |
| Defendant, | ) **REPORT AND RECOMMENDATION** |

**I. Introduction**

Plaintiff, Lonzell Townsend ("Townsend" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On October 19, 2022, Townsend filed an application for SSI, alleging a disability onset date of September 25, 1960. (ECF No. 6, PageID #: 39). The application was denied initially and upon reconsideration, and Townsend requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On May 30, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*See id.* at PageID #: 57-78). At some point during the process, Townsend amended the alleged onset date to October 19, 2022, the date

1

of his application. (*Id.* at PageID #: 39, 284). On July 1, 2024 the ALJ issued a written decision finding Townsend was not disabled. (*Id.* at PageID #: 39-52). The ALJ's decision became final on April 18, 2025, when the Appeals Council declined further review. (*Id.* at PageID #: 23).

On June 3, 2025, Townsend filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 8, 10, 11). Townsend asserts the following assignment of error:

> The ALJ's finding at Step 4 of the sequential evaluation process that Plaintiff has the residual functional capacity to only be off task 5% of the workday is not supported by substantial evidence

(ECF No. 8 at 2).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Townsend's hearing:

> The claimant is 63 years old. At the hearing, he testified that he becomes dizzy and lightheaded, he feels like he will faint, and he loses his balance. The claimant further testified that he gets tired, he has to lie down, his feet cause some difficulty walking, and he hears voices and sees things that do not exist.

(ECF No. 6, PageID #: 46).

### B. Relevant Medical Evidence

The ALJ also summarized Townsend's health records and symptoms

> On November 7, 2022, the claimant complained of fatigue. (7F/8). Upon examination, his mood and behavior were normal. (7F/10). The claimant's HIV was considered stable, and his medications were continued. (7F/10). He was told to follow up with his primary care physician for his elevated blood pressure. (7F/11). Four days later, the claimant denied mental health issues, including suicidal and homicidal ideation. (3F/2). A mental status examination revealed memory deficits, poor insight and judgment, and borderline intelligence, yet his mood was euthymic, his affect was broad, his thought process was logical, and he was calm and

2

cooperative. (3F/2-3, 10). He felt his mental health symptoms were controlled on medication, despite having some difficulty with comprehension. (3F/10). He denied a history of psychiatric hospitalizations. (3F/10). He reported that he enjoyed walking and staying active. (3F/3).

On December 1, 2022, the claimant denied fatigue. (7F/26). Upon examination, he was alert and oriented to person, place, and time, and his mood and behavior were normal. (7F/27). His blood pressure was elevated, yet he was asymptomatic. (7F/29). A few days later, the claimant was alert and conversational with a normal affect. (4F/20). Scarring was found on his scalp and face, and he had mildly lichenified plaque with scale, for which he was prescribed ointment. (4F/21). On December 15, 2022, the claimant maintained a viral suppression and immunologic response to HIV with medication, and his blood pressure was stable on medication. (7F/33-34).

In January 2023, the claimant attended a psychiatric appointment. (10F/2). He complained of decreased energy, yet he acknowledged that he walked regularly. (Id.). A mental status examination showed that he was appropriately groomed, his speech was normal, he had no issues naming objects or repeating phrases, his mood and affect were euthymic and congruent, his concentration was poor yet improved, his thought content and process were coherent and goal directed with no abnormal or delusional thought content or cognitive disturbance, his fund of knowledge was good, his associations were intact, he exhibited no psychosis or disturbances of perception, he expressed no suicidal or homicidal ideation, he was oriented, his comprehension was improved, and his insight and judgment were good. (10F/5-6). His schizophrenia was considered stable, and his medications were continued. (10F/7, 9). One month later, the claimant reported that his scalp discoid lupus had not been getting worse, and he denied irritation, swelling, redness, and any other symptoms. (7F/66). As the discoid lupus was not currently active, it was monitored rather than starting the claimant on immunosuppression medications. (7F/67).

On July 13, 2023, the claimant attended a psychiatric appointment. (10F/34). A mental status examination showed that he was appropriately groomed, his speech was non-pressured, his mood, fund of knowledge, and thought process/content were normal, his affect was blunted/flat, his concentration and attention span were good, and no psychosis/disturbance of perception was detected. (10F/37-38). On July 24, 2023, the claimant informed his medical provider that he had a good energy level. (15F/7). Three days later,

3

> he was found to have been non-compliant with HIV antiretroviral therapy and his hypertension medications. (14F/35). He reported that his mood was stable, and he denied suicidal ideation. (14F/36). One month later, the claimant's discoid lupus erythematosus was considered stable. (12F/17).
>
> In November 2023, the claimant attended a psychiatric appointment. (13F/14). A mental status examination revealed that he was appropriately dressed, his speech was non-pressured, he had no issues naming objects or repeating phrases, his mood, associations, fund of knowledge, and thought content were normal, his affect was blunted/flat, his concentration and attention span were good, and no psychosis or disturbance of perception was detected. (13F/17-18). Buspar was added to his medications. (13F/24).
>
> On March 8, 2024, the claimant denied dizziness, lightheadedness, and fatigue. (14F/9). Upon examination, no motor weakness was detected, and his mood, behavior, thought content, and judgment were normal. (14F/10-11). His hypertension was controlled, his HIV was stable, and he was instructed to increase his level of physical activity. (14F/2).
>
> In April 2024, the claimant attended a psychiatric appointment. (13F/48). He reported that his medications worked, and he denied hallucinations, depression, and anxiety. (13F/48). During a mental status examination, he appeared disheveled, his speech was hyperverbal and pressured, his mood and affect were anxious, he was distractable, his thoughts were racing, his associations were circumstantial and tangential, yet he had no issues naming objects or repeating phrases, there were no suicidal or homicidal concerns, his fund of knowledge was normal, his insight and judgment were fair, and his memory was intact (13F/51-53). His medications were changed. (13F/56). Two days later, the claimant informed his medical provider that he felt well and had no complaints. (15F/2). Upon examination, his hand grasps were strong and equal bilaterally, his mood and affect were normal, and he exhibited normal strength in all extremities. (15F/3-4). He was advised to exercise at least 3 times per week for 30 minutes a day. (15F/4). One month later, the claimant attended a psychiatric appointment. (16F/1). He reported some dizziness, yet he acknowledged that medication stabilized his mood. (16F/4). He presented with pressured speech and had difficulty staying on task, but he was redirectable. (16F/4).

(ECF No. 6, PageID #: 47-48).

4

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant has not engaged in substantial gainful activity since October 19, 2022, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: discoid lupus erythematosus, human immunodeficiency virus (HIV), schizoaffective disorder, and hypertension (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except: he should avoid hazards, including heavy machinery, moving machinery, and unprotected heights, he will be off task up to 5% of the workday, he must be able to tolerate simple, routine tasks, occasional changes with occasional decision making, he should avoid pace rate work, no strict production quotas; he should be able to tolerate conditions where changes are well explained in advance; he should be able to tolerate occasional interaction with coworkers and supervisors as it relates to job duties and job functions; less than occasional interaction to the extent interactions are outside the scope of job duties and job functions; interaction with public should be avoided. Avoid positions requiring use of managerial, mediation, and conflict resolution skills.

5. The claimant has no past relevant work (20 CFR 416.965).

    …

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 19, 2022, the date the application was filed (20 CFR 416.920(g)).

(ECF No. 6, PageID #: 41-42, 46, 51-52).

5

V. Law & Analysis

   A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

   B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant

work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 416.920(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 416.912(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Townsend raises a single issue on appeal: "The ALJ's finding at Step 4 of the sequential evaluation process that Plaintiff has the residual functional capacity to only be off task 5% of the workday is not supported by substantial evidence." (ECF No. 8 at 10). Townsend argues "the ALJ did not offer any explanation whatsoever to support this ultimately dispositive issue" and "the decision appears arbitrary and capricious when the record does not support the reasonableness of the 5% finding." (*Id.* at 11). Townsend highlights records that he asserts show his "difficulty with comprehension and need for information to be repeated to him that was already provided;" multiple assessments of poor and/or distractable attention span and concentration; and reports of fatigue. (*Id.*). Plaintiff's position is that "a reasonable person cannot decipher how the ALJ concluded that Plaintiff is capable of being off-task 5% of the workday, as opposed to 10 or 15%." (*Id.* at 12-13). Further, because the vocational expert testified that there would be no work available for an individual who would be off-task 15% of

the workday, Plaintiff asserts the error was not harmless and requires remand for a new hearing and decision. (*Id.* at 13-14).

The Commissioner responds that substantial evidence supports the ALJ's evaluation of Townsend's RFC, including her evaluation of the objective medical evidence, the persuasiveness of the State agency opinions, and Townsend's statements. (ECF No. 10 at 10). The Commissioner argues that the ALJ considered the abnormal findings and complaints Townsend highlights but also considered contrary evidence showing normal mental status examinations and denials of fatigue. (*Id.* at 11-12). Further, the Commissioner argues the ALJ relied on opinions from the State agency consultants and "Plaintiff has not pointed to evidence from any treating provider opining that Plaintiff had off-task limitations greater than those found in the RFC." (*Id.* at 12). Thus, the Commissioner's position is that the ALJ built an accurate and logical bridge between the evidence and her conclusions and that "[i]n citing evidence which he believes supports the need for an off-task limitation of 15% of the time, rather than 5%, Plaintiff is inviting the Court to re-weigh the evidence, which it cannot do." (*Id.* at 13-14).

In reply, Plaintiff argues he is not asking the Court to reweigh the evidence but rather asking the Court to determine "whether the ALJ constructed a 'logical bridge' between the evidence and the determination that Plaintiff would be off task 5% of the time instead of 15% of the time, when it would be improper for a 15% hypothetical to be presented if it did not accurately portray Plaintiff's physical and mental impairments." (ECF No. 11 at 1-2) (footnotes omitted).

At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 416.945(a)(3). An RFC determination sets out an individual's work-related abilities despite his or her limitations. *See id.* "In rendering his RFC

decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 880 (N.D. Ohio 2011) (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010)); *see* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). The RFC is for the ALJ to determine; however, it is well established that the claimant bears the burden of establishing the impairments that determine his RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

Here, the ALJ set forth a mental RFC as follows:

> he will be off task up to 5% of the workday, he must be able to tolerate simple, routine tasks, occasional changes with occasional decision making, he should avoid pace rate work, no strict production quotas; he should be able to tolerate conditions where changes are well explained in advance; he should be able to tolerate occasional interaction with coworkers and supervisors as it relates to job duties and job functions; less than occasional interaction to the extent interactions are outside the scope of job duties and job functions; interaction with public should be avoided. Avoid positions requiring use of managerial, mediation, and conflict resolution skills.

(ECF No. 6, PageID #: 46).

As an initial matter, while Townsend is correct that the ALJ presented a hypothetical to the vocational expert including a 15% off-task limitation, "an ALJ need not adopt every restriction included in a hypothetical." *Devona Nicole Garmon King v. Comm'r of Soc. Sec.*, No. 3:22-CV-01804-JJH, 2023 WL 6006360, at *6 (N.D. Ohio July 21, 2023) (citing *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019)). In other words, "the mere fact

9

that the ALJ asked the VE about certain hypothetical limitations does not mean that the ALJ is then required to adopt them into the RFC." *Aiello v. Comm'r of Soc. Sec.*, No. 1:19-CV-01558, 2020 WL 2526956, at *3 (N.D. Ohio May 18, 2020) (citing *Sayler v. Comm'r of Soc. Sec.*, 574 F. App'x 595, 596 (6th Cir. 2014)); *see also Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) ("By posing the [hypothetical] question [to the vocational expert], the administrative law judge did not make a finding or bind himself to a finding that plaintiff was off-task at least 10% of the workday."); *Koster v. Comm'r of Soc. Sec.*, 643 F. App'x 466, 478 (6th Cir. 2016). Rather, the appropriate questions are whether substantial evidence supports the RFC that was ultimately adopted and whether the ALJ built an accurate and logical bridge between the 5% off-task limitation and the evidence of record.

Here, the ALJ provided explanations for her mental RFC finding throughout the decision. For instance, in analyzing whether Townsend met or equaled a listing, the ALJ considered his mental abilities and provided the following relevant explanation:

> The third functional area is concentration, persistence, or maintenance of pace. In this area, the claimant has a moderate limitation. Concentration, persistence, or pace refers to the abilities to focus attention on work activities and stay on task at a sustained rate sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. Limitations in concentration, persistence, or pace are best observed in work settings, but may also be reflected by limitations in other settings. At both prior administrative levels, the claimant had a moderate limitation in this area. (4A/4; 1A/4). In July 2023, during a mental status examination, his concentration and attention span were good. (10F/37-38). However, in January 2023, the claimant's concentration was poor. (10F/5-6). In April 2024, he was distractible, his thoughts were racing, and his associations were circumstantial and tangential. (13F/51-53). This evidence supports a finding that the claimant has a moderate limitation in concentration, persistence, or pace due to his mental impairment.

10

(*Id.* at PageID #: 45). Additionally, the ALJ provided the following explanation for finding Townsend's mental health impairments were not as severe as he alleged:

> At the hearing, the claimant testified that he hears voices and sees things that do not exist. These allegations are not entirely consistent with the medical record. For instance, in November 2022, the claimant indicated that his mental health symptoms were well-controlled with medication. (3F/10). In January 2023, his schizophrenia was considered stable. (10F/7). In April 2024, the claimant reported that his medications worked well, and that he did not experience hallucinations. (13F/48). Numerous mental status examinations appear throughout the record. In January 2023, no abnormal or delusional thought content or cognitive disturbances were detected, and the claimant exhibited no psychosis or disturbances of perception. (10F/5-6). Six months later, another examination revealed no psychosis/disturbance of perception. (10F/37-38). The same was true in November 2023. (13F/17-18). All of this evidence suggests that the claimant's mental symptoms are not as disabling as the claimant alleged. Nevertheless, the undersigned has accounted for them by limiting the claimant to simple, routine tasks, occasional changes with occasional decision making, no pace rate work, no strict production quotas, changes are well explained in advance, social limitations, and avoidance of managerial, mediation, and conflict resolution skills.

(*Id.* at PageID #: 49). The ALJ also explained her reliance on an opinion from one of the State agency consultants in crafting the RFC:

> At the reconsideration level, Kevin Lauer, PhD found that the claimant could understand, remember, carry out, and complete simple and routine 1-2 step tasks, in a predictable work environment, where pace was not fast, and where there were no strict time or production quotas, he could work in a setting that did not involve public interaction, interaction with coworkers and supervisors should be brief and superficial in situations that did not require resolving conflicts, he could work in an environment where duties were predictable and major changes were occasional and could be explained in advance. (4A/5-6). The undersigned concludes that these findings are persuasive. The findings were supported by the evidence in the file at the time of Dr. Lauer's review, and they are consistent with the complete evidence in the file. For example, in November 2022, during a mental status examination, the claimant's mood was euthymic, his affect was broad, and his thought process was logical, yet he displayed

> memory deficits, his intelligence was borderline, and his insight and judgment were poor. (3F/2-3). At another mental status examination, the claimant's concentration was poor. (10F/5-6). At another time, the claimant was observed to display an anxious mood and affect. (13F/51-53). Such evidence is consistent with limiting the claimant to simple, routine tasks, avoiding pace rate work, avoiding strict production quotas, avoiding public interaction, avoiding positions that required conflict resolution skills, changes would be explained in advance, interaction with coworkers and supervisors would be occasional or less than occasional depending on the topic of conversation.

(ECF No. 6, PageID #: 50).

Considered as a whole, the ALJ's decision makes clear that while she found Townsend suffered from moderate impairments in his ability to maintain concentration and pace and would therefore be off task 5% of the time, she did not find that the evidence—including the medical records and the state agency opinion—supported greater limitations. "An RFC determination that is supported by the medical opinions of state agency physicians is generally supported by substantial evidence." *Sittinger v. Comm'r of Soc. Sec.*, No. 1:22-CV-01927-BYP, 2023 WL 6219412, at *13 (N.D. Ohio Sept. 7, 2023), *report & recommendation adopted sub nom.*, 2023 WL 6214530 (N.D. Ohio Sept. 25, 2023); *see also Maldonado o/b/o A.C. v. Kijakazi*, No. 4:20-CV-1878, 2022 WL 361038, at *6 (N.D. Ohio Jan. 14, 2022) ("There is ample case law concluding that State Agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision.") (collecting cases), *report & recommendation adopted sub nom.*, 2022 WL 356557 (N.D. Ohio Feb. 7, 2022). Although Plaintiff highlights various records he argues support a 15% off-task limitation, he does not cite any opinion or evidence explicitly making such a finding. Thus, as the Commissioner argues, it is hard to interpret his argument as anything more than a request that the Court reweigh the evidence and reach a different conclusion, which is beyond this Court's scope of review. *See Reynolds v. Comm'r of Soc. Sec.*,

424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.") (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)).

Contrary to Plaintiff's argument, the ALJ's RFC is supported by substantial evidence, and the ALJ built an accurate and logical bridge between the RFC and the evidence supporting the 5% off-task limitation. Thus, the ALJ did not err.

**VI. Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Townsend's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: December 19, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).